## THE ROBERT R. KIRKLAND.

(Circuit Court of Appeals, Third Circuit.   May 7, 1907.)

### No. 20.

1. SHIPPING—OWNERSHIP OF VESSEL—EVIDENCE CONSIDERED.

Evidence considered, and held not to sustain the claim of a respondent to the ownership of a vessel in controversy.

2. SAME—LIEN—AUTHORITY TO CONTRACT FOR REPAIRS.

One of the respondents and another person were appointed joint agents to represent a number of parties who had joined in the purchase of the plant and vessels of a dredging company to be paid for in installments, with power to make the payments and receive and manage the property. The other respondent was a firm of which the first respondent was a member, and which was also one of the purchasers of the dredging property. Held, that the individual respondent had no power as agent to contract for the making of repairs by his firm on one of the vessels purchased and delivered to the agents, without the concurrence of his co-agent, and that the firm could not hold the vessel under a claimed lien for repairs so ordered by him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 323.]

3. SAME—SUIT TO RECOVER VESSEL—TITLE TO SUPPORT.

The purchasers of such dredging fleet having ratified the action of the directors of a dredge owners association of which they were all members, appointing a committee to supercede the agents previously acting, with power to complete payment and take title to the property purchased and to manage and dispose of the same, such committee, after receiving a bill of sale of the purchased vessels, in their own names, were authorized to maintain a suit as owners to recover possession of one of the vessels against one of the constituent owners which wrongfully withheld it.

**4. ADMIRALTY.—COST OF KEEPING LIBELED VESSEL—ALLOWANCE TO MARSHAL.**
　　A marshal who has taken possession of a vessel on a process from a court of admiralty is responsible for her safe keeping to all parties in interest, and, if he dispenses with a caretaker at the request of one party, it is within his discretion to again take possession and incur the expense of a keeper as authorized by Rev. St. § 829 [U. S. Comp. St. 1901, p. 636].

Appeal from the District Court of the United States for the District of New Jersey.

For opinion below, see 143 Fed. 610.

R. D. Benedict, for appellants.

Albert A. Wray and Linsly Rowe, for appellees.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

GRAY, Circuit Judge. This is an appeal from the United States District Court for the district of New Jersey, in admirality, in a libel for possession, by the appellees, against the steamtug Robert R. Kirkland, Ralph G. Packard and Josiah S. Packard, appellants.

On the pleadings and proofs of the respective parties, the court below adjudged that the libelants were the true legal owners of the said steamtug, and that possession of the same be delivered to them by the marshal, and that the libelants recover against Ralph G. Packard and Josiah S. Packard their taxed costs, amounting to $524.00.

The opinion, pursuant to which this decree was entered, is reported in 143 Fed. 610.

After a careful examination of this record we are convinced that the learned judge of the court below was correct in his findings of fact and conclusions of law. The contention of appellants on the question of title to the tug, seems to rest largely on an erroneous conception of the authority of the Board of Directors of the Atlantic & Gulf Coast Dredge Owners Association, with respect to the business and affairs of the parties of the second part to the agreement of October 12th, 1892. Its relation to these parties was purely advisory, and though intimate, by reason of the fact that the parties of the second part constituted a part of its membership, its board of directors did not represent, and did not claim to represent, said parties to the agreement referred to, otherwise than by their friendly offices. Even if the weight of the testimony established the fact of the agreement to sell, alleged by R. G. Packard to have been made by said board of directors, of the steamtug to himself, for $1600.00 (which we do not think it does), such an agreement would have been, as found by the learned judge of the court below, a nullity. There was no evidence of any authority in said board to make such a sale, and they had expressly disclaimed any such authority in the vote adopted by them on December 4th, 1895, in which R. G. Packard participated, by providing:

"That this vote should be submitted to the members of said party of the second part to the contract aforesaid, for their ratification, adoption and confirmation."

In regard to the possessory lien claimed by the firm of R. G. Packard and J. S. Packard, it may be added to what has been said

by the learned judge of the court below, that the bills for repair made by the firm, of which R. G. Packard was a member, are open to the criticism to which all transactions are amenable, where a trustee deals with himself in matters affecting the trust property. We agree, however, to the correctness of the ground upon which the court below rested its decision.

Counsel for the appellants say in their brief, that:

"The district court committed two grave errors, in its consideration of the claim of R. G. and J. S. Packard to be reimbursed for their expenditures on the vessel, before possession should be taken from them."

They say:

"The first error consisted in misunderstanding the nature of the claim of the Packard firm."

In proof of this, they cite the following language of the court:

"He (Packard) could not, without the consent of his co-trustee, authorize his firm to repair the tug in any such manner as to give to that firm a *maritime lien* upon her."

The italics are those of counsel, who proceed to say that the firm "never claimed to have a maritime lien on the tug. They claimed below, and claim here, a simple common law or possessory lien." We think it is quite clear, that the learned judge of the court below used the words "maritime lien" in a general or non-technical sense, as being a lien, the subject matter of which was a vessel, and not as distinguished from a common law or possessory lien. What was said by the learned judge, was entirely applicable to the common law lien claimed by appellants.

We have examined carefully the exceptions filed by claimants and respondents in the court below, to the marshal's fees for compensation to a keeper, from March 17th, 1899 to May 29th, 1899, at $2.50 per day, and also for extra compensation for expenses of pumping, 74 days at 50 cents per day, amounting in all to $222.00. The ground of appellant's contention is, that, inasmuch as, shortly after the marshal had taken possession of the tug, by virtue of the process issued at the instance of the libelants, the watchman placed thereon by the marshal was withdrawn at the request of the proctors for the libelants. Some days after this withdrawal, the tug was again seized by the marshal, on a libel filed by R. G. Packard, one of the respondents in this case. A keeper was then put in charge of the tug, and after the dismissal of the said libel by the court, was kept in charge under the authority claimed by the marshal under the original process, by virtue of which he first seized the tug at the suit of the libelants in the present case. It appears from the exhibits that some protest was made, against thus incurring the expense of the keeper, by the proctors for the libelants, and an offer was made to give the marshal an indemnity bond, on condition that he would dispense with such custody. This bond, however, was never given, and the marshal insisted that his responsibility under the process in his hands was such as required him to see to the safety of the vessel that he had seized. The responsibility thus incurred was not only to the libelants, but to

all who were interested as claimants, or otherwise, in the property seized. In dispensing for a few days with a keeper, at the request of the proctors for the libelants, in the first instance, the marshal acted on his own responsibility, but it was entirely within his discretion, for his own protection, and in the performance of his duty, to again take possession and incur the expense of a keeper, authorized by section 829 of the Revised Statutes [U. S. Comp. St. 1901, p. 636]. We think the marshal, in doing so, acted within his rights, and that the charges allowed by the court for a keeper, were within the legal limit prescribed, and the charge for extra labor for pumping to keep the vessel afloat was reasonable, and was properly incurred.

The order of the court below in that respect is, therefore, approved, and its decree is hereby affirmed.